# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK,
As subrogee of Britton Construction Ins.,

   Plaintiff,

vs.            No. CIV 08-0828 JB/RHS

WESTERN STATES FIRE
PROTECTION CO.,

   Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment and Memorandum of Law, filed February 20, 2009 (Doc. 23). The Court held a hearing on May 15, 2009. The primary issue is whether the subrogation waiver in the contract between owner University of New Mexico ("UNM") and general contractor Britton Construction Co. ("Britton") precludes Plaintiff Great American Insurance Company of New York ("Great American") from seeking subrogation against Defendant and subcontractor Western States Fire Protection Co. ("Western States") for damages Great American paid and which allegedly flowed from Western States' negligence. The Court finds that the scheme of insurance does not preclude a subrogation claim against Western States, and that Western States was not a co-insured under the policy. Nevertheless, the Court finds that the subrogation waiver applies to Western States as a third-party beneficiary. The Court will therefore grant the motion for summary judgment.

## FACTUAL BACKGROUND

While the major dispute in this motion revolves around the interpretation of a clause in a

construction contract, a few background facts are helpful in understanding the operation of the contract clause at issue. Britton was the general contractor for the Zimmerman Library Basement Floor Fire Damaged Rebuild Project ("Project"), which was carried out pursuant to University of New Mexico Contract UNM #2006 - J0005. Great American is a commercial insurer that provided insurance to Britton for its work on the project. See Attachment to Notice of Removal, Complaint for Subrogation Interest ¶ 5, at 2, filed in federal court September 11, 2008 (Doc. 1)("Complaint"). Western States is a subcontractor who specializes in plumbing and fire-protection systems, and who was subcontracted by Britton to provide fire-protection services on the Project.

Great American alleges in its Complaint that, in October 2007, a flange attached to two water mains that Western States installed separated, allowing water to flood the interior of the Zimmerman Library basement and to cause significant damage. See Complaint ¶ 7, at 3. Great American contends that, as a result of the water damage, Britton made a claim under its policy, and that Great American ultimately paid out $491,614.52 after applying the $1000.00 deductible. See id. ¶¶ 9-10, at 3. Great American now seeks, through this subrogation claim, to recover what it paid out from Western States.

### 1.    The Contract between UNM and Britton.

By the general conditions and terms of the Contract between Britton and UNM for the Project, UNM was required to provide property insurance written on a builder's risk "all risk" insurance or equal policy form – Property Insurance – to protect the interests of the contractor, subcontractors, and sub-subcontractors in the "Work," as the Contract defined that term. See Exhibit 1 to Motion, General Conditions of the Contract for Construction § 11.4.1, at 52 (revised March 5, 2004)(Doc. 23-2)("Contract"). The Contract states:

11.4.1 The Owner will provide property insurance written on a builder's risk "all-

risk" or equivalent policy form in the amount of the initial contract sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance will be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Paragraph 11.4 to be covered, whichever is later. This insurance will include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

11.4.2   The Builder's Risk coverage to be furnished by the Owner is provided under the State of New Mexico's Blanket Property Coverage Policy, a copy of which is available at UNM's Department of Facility Planning.

11.4.3   If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner will so inform the Contractor in writing prior to commencement of the Work. The Contractor may then affect insurance, which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order, the cost thereof will be charged to the Owner.

Contract §§ 11.4.1 to 11.4.3, at 52. UNM, as the owner, did not obtain a policy pursuant to these Contract provisions. Britton, however, obtained an insurance policy. That policy lists "Britton Construction Inc." as the insured. Great American Insurance Group Policy at 1 (filed March 6, 2009)(Doc. 24-3)("Policy"). The Policy does not list any other insureds.

The Contract also contains a clause titled "Waivers of Subrogation," which provides:

The Owner and Contractor waive all rights against (1) each other and any of their Subcontractors, Sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their Subcontractors, Sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner. The Owner or Contractor, as appropriate, will require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the Subcontractors, Sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar

waivers each in favor of other parties enumerated herein.  The policies will provide such waivers of subrogation by endorsements or otherwise.  A waiver of subrogation will be effective as to any person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

Contract § 11.4.8, at 54.

> 2.      **The Subcontract.**

Britton and Western States entered into a subcontract.  See Exhibit B to Response,

Subcontract at 1 (dated June 11, 2007)(Doc. 24-3).  The Subcontract required Western States to

[f]urnish all paint, labor, equipment, and material required to complete [the] Automatic Fire Sprinkler System at the Zimmerman Library Basement Floor Fire Damage Rebuild, Per Section 21100 – Water Based Fire Suppression System (Dated 4/27/07) and Contract Document Plans (Dated 4/27/07) hereby made part of this subcontract and hereafter referenced as contract documents.  Scope of work to include additive alternates #1 through #6.  Scope of work specifically includes all applicable bonds for this project.

Subcontract at 1.  The Subcontract incorporates the terms of the Contract between UNM and Britton.

See Subcontract at 1.  To this end, the Subcontract provides that Western States "agrees to furnish

all Labor, materials and equipment to complete all of the work described in paragraph 'The Work'

hereof for the construction of and or work done on [the Project] . . . [i]n strict accordance with the

applicable terms and provisions of [the] contract between Owner . . . and CONTRACTOR . . . ."

Subcontract at 1.  Moreover, the Subcontract also contains a subrogation waiver provision, which

states:

The Subcontractor shall furnish and pay for insurance and shall furnish to the owner and General Contractor a copy of the Certificate of Insurance indicating the minimum coverage described in Division 0 of the specifications.  All insurance policies noted above shall contain a Waiver of Subrogation Clause whereby the Subcontractor waives all rights of subrogation they may have had under said policies with respect [to] the Owner.

Subcontract ¶ 16, at 3.

**PROCEDURAL BACKGROUND**

Pursuant to rule 56 of the Federal Rules of Civil Procedure, Western States moves for summary judgment.  To support its motion for summary judgment, Western States argues that the scheme of insurance for the Project precludes subrogation.  See Motion at 8.  According to Western States, the Contract between the University of New Mexico and Britton sets out a typical plan for insurance, whereby either the owner or the general contractor must provide a builder's risk policy to cover every company participating in the project.  See Motion at 8.

Western States also contends that Western States is a co-insured under the Great American policy and that subrogation is therefore prohibited.  See id. 14.  In arguing that it was a co-insured under the policy, Western States maintains that the all-risk property insurance was to cover all parties involved, including the subcontractors.  See id. at 15.  Western States also points out that the Subcontract permits Western States to make a claim under the builder's risk policy.  See Motion at 15.  Given its contention that it was a co-insured, Western States insists that "a risk insurer may not subrogate against its own insured or co-insured 'even though the subcontractors' negligence may have resulted in a loss to another co-insured.'"  Id. (quoting State of New Mexico v. Siplast, Inc., 117 N.M. 738, 740, 877 P.2d 38, 40 (1994)).

Great American does not dispute that, as the insurer, it does not have greater rights than Britton as its insured.  See Plaintiff's Response to Defendant's Motion for Summary Judgment at 5, filed March 6, 2009 (Doc. 24)("Response").  Moreover, Great American agrees that the Contract between Britton and UNM contains a subrogation waiver.  See Response at 5.  Great American argues, however, that the subrogation waiver applies only against UNM and not against Britton.  See id.  As evidence for such a limitation, Great American points out that there is a subrogation waiver in the Subcontract that states: "Subcontractor waives all rights of subrogation they may have had

under said policies with respect to the Owner."  Response at 6.

Great American concedes that an insurer may not seek subrogation against its insured, but disputes the contention that Western States is a co-insured under the Great American policy.  See id. at 8; Tr. at 29:11-25 (Phillips).  Great American maintains that a careful review of the policy in this case reveals that the named insured is Britton and that Western States is not included as an insured.  See Response at 9.  Thus, according to Great American, Western States is not covered under the policy.  See id. at 10.

Great American urges the Court to ignore Western States' arguments in support of summary judgment because those arguments are based on contracts that were in place for the Project.  See Response at 10.  Great American argues that the alleged negligent acts that led to the water leak were performed outside the scope of the Contract, and that Western States therefore cannot rely on the Contract for its defenses and for summary judgment.  See Response at 10.

At the hearing, the Court asked the parties whether it should interpret the terms at issue in this case as a matter of law or whether a Mark V[1] hearing would be necessary.  See Tr. at 8:13-18 (Court).  All parties agreed that the Court could decide the issues in this case without a Mark V hearing.  See id. at 23:24-24:13 (Phillips, Court, Pharris).  As a part of that agreement, Great American agreed that, as a matter of law, the Court could, on the record before it, determine whether

---

[1] Mark V, Inc. v. Mellekas, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993).  In Mark V, Inc. v. Mellekas, the Supreme Court of New Mexico summarized the circumstances under which it is appropriate for a district court to construe a contract as a matter of law, and when a district court should find that a contract is ambiguous and leave construction of the contract to a jury.  According to the Supreme Court of New Mexico in Mark V, Inc. v. Mellekas, a district court may take extrinsic evidence to determine whether a contract is ambiguous, and "if the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law.  If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists."  Id., 845 P.2d at 1235 (citations omitted).

Western States committed the allegedly negligent acts at issue in this case outside the scope of its contract.  See id. at 41:23-42:1 (Court and Phillips).

Great American stated at the hearing that the subrogation waiver in the Contract between Britton and UNM applies horizontally but not vertically.  See Tr. at 25:1-13 (Phillips).  Thus, according to Great Western, UNM waived the right to seek subrogation against Britton and its subcontractors, but Britton did not waive the right to subrogation against its subcontractors.  See id. The Court also queried the parties whether it would have to engage in a third-party-beneficiary analysis.  Both parties agreed that such analysis is inapplicable in this case.  See Tr. at 27:15-21 (Court, Phillips).

Great American conceded at the hearing that it could not seek a subrogation claim against its own insured.  See id. at 29:13-25 (Phillips).  That concession notwithstanding, Great American insisted that Western States is not a co-insured.  See id.  Great American therefore argued that it can seek subrogation against Western States.  See id.

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the movant meets this burden, rule 56(e) requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S.

at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d

1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must

set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters

for which it carries the burden of proof.")(internal quotation marks omitted); Otteson v. United

States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary

judgment motion is made, the opposing party may not rest on the allegations contained in his

complaint, but must respond with specific facts showing the existence of a genuine factual issue to

be tried.'")(quoting Coleman v. Darden, 595 F.2d 533, 536 (10th Cir. 1979)).  The party opposing

a motion for summary judgment must "set forth specific facts showing that there is a genuine issue

for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics

Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides that

"an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its

response must – by affidavits or as otherwise provided in this rule – set out specific facts showing

a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

It is not enough for the party opposing a properly supported motion for summary judgment

to "rest on mere allegations or denials of his [or her] pleadings."  Anderson v. Liberty Lobby, Inc.,

477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990).  "The

non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations

unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008

WL 2309005 at * 1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v. Blue Cross and

Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for

summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and

may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony

Nat'l Ins. Co. v. Omer, 2008 WL 2309005 at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. The mere existence of a scintilla of evidence will not avoid summary judgment. See Vitkus v. Beatrice Co., 11 F.3d at 1539. There must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## RELEVANT LAW REGARDING CONTRACT INTERPRETATION

The Supreme Court of New Mexico has summarized the law of contract interpretation in New Mexico as follows:

> The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. C.R. Anthony [v. Loretto Mall Partners], 112 N.M. [504,] 508-09, 817 P.2d [238,] 242-43 [(1991)]. If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. Id. at 510, 817 P.2d at 244. If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists. Vickers v. North Am. Land Dev., Inc., 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). At that point, if the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder . . . .

-9-

Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235.

## RELEVANT LAW REGARDING THIRD-PARTY BENEFICIARIES

As a general rule, "one who is not a party to a contract cannot maintain suit upon it." Fleet

Mortgage Corp. v. Schuster, 112 N.M. 48, 49, 811 P.2d 81, 82 (1991). Despite this general rule, a

third party may be a beneficiary of a contract, and may, as a beneficiary, have enforceable rights

against another party to the contract. See id., 811 P.2d at 81. The Supreme Court of New Mexico

has explained:

> A third-party may have an enforceable right against an actual party to a contract if
> the third-party is a beneficiary of the contract. Fleet Mortgage Corp. v. Schuster, 112
> N.M. 48, 49, 811 P.2d 81, 82 (1991). A third-party is a beneficiary if the actual
> parties to the contract intended to benefit the third-party. Id. at 49-50, 811 P.2d at
> 82-83; Leyba v. Whitley, 120 N.M. 768, 773, 907 P.2d 172, 177 (1995). The intent
> to benefit the third-party "'must appear either from the contract itself or from some
> evidence that the person claiming to be a third party beneficiary is an intended
> beneficiary.'" Fleet Mortgage, 112 N.M. at 50, 811 P.2d at 83 (quoting Valdez v.
> Cillessen & Son, Inc., 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987)).

Callahan v. New Mexico Federation of Teachers-TVI, 139 N.M. 201, 208, 131 P.3d 51, 58 (2006).

## RELEVANT LAW REGARDING SUBROGATION

New Mexico recognizes that the doctrine of subrogation "allows an insurer who has fully

compensated the insured to step into the shoes of the insured and collect what it has paid from the

wrongdoer." Amica Mutual Insurance Co. v. Maloney, 120 N.M. 523, 527, 903 P.2d 834, 838

(1995). "Subrogation, whether created by contract or by operation of law, is an equitable remedy

and equitable principles control its application." Farmers Ins. Group of Companies v. Martinez, 107

N.M. 82, 83, 752 P.2d 797, 799 (Ct. App. 1988). Subrogation is therefore "an equitable remedy of

civil law origin whereby through a supposed succession to the legal rights of another, a loss is put

ultimately on that one who in equity and good conscience should pay it." U. S. Fidelity & Guaranty

Co. v. Raton Natural Gas Co., 86 N.M. 160, 162, 521 P.2d 122, 124 (1974).

Courts in other jurisdictions have dealt with waivers of subrogation similar to the one at issue in this case.  For example, the Texas Court of Appeals held that a subrogee insurance company was barred from bringing a claim against a subcontractor.  See Temple EasTex, Inc. v. Old Orchard Creek Partners, LTD, 848 S.W.2d 724, 731 (Tex. Ct. App. 1992).  In Temple EasTex, Inc. v. Old Orchard Creek Partners, LED, an owner of a damaged apartment complex brought a claim against a contractor and subcontractor for the damage. See id. at 730.  The contract between owner and contractor provided:

> **Section 11.3.1** Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the work and shall insure against the perils of fire, extended coverage, and shall include "all risk" insurance for physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief. If the Owner does not intend to purchase such insurance for the full insurable value of the entire Work, he shall inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of himself, his Subcontractor and the Sub-subcontractors in the work, and by appropriate Change Order the cost thereof is charged to the Owner. If the Contractor is damaged by failure of the Owner to purchase or maintain such insurance and to notify the Contractor, then the Owner shall bear all reasonable costs properly attributable thereto.

> **Section 11.3.6** The Owner and Contractor waive all rights against (1) each other and the Sub-contractors, Sub-subcontractors, agents and employees each of the other, and (2) the Architect and separate contractors, if any, and their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the owner as trustee. The foregoing waiver afforded the Architect, his agents and employees shall not extend to the liability imposed by Subparagraph 4.18.3. The Owner or Contractor, as appropriate, shall require of the Architect, separate contractors, Subcontractors, and Sub-subcontractors by appropriate agreements, written where legally required for validity, similar waivers each in favor of all other parties enumerated in this Subparagraph 11.3.6.

Temple EasTex, Inc. v. Old Orchard Creek Partners, LED, 848 S.W.2d at 729-30 (bold in original).

In holding that the subrogation waiver applied to subcontractors, the Texas Court of Appeals explained that the clauses it was analyzing were standard provisions, and that '[the policy underlying these clauses is to avoid disruption and disputes among the parties to the project. The need for lawsuits between the parties is eliminated because all contracting parties are protected from property loss under the owner's property insurance." Id. at 731.  The Texas Court of Appeals also found that the subcontractor could benefit from the waiver as a third-party beneficiary to the contract between the owner and the general contractor.  See id.  The Texas Court of Appeals in Temple EasTex, Inc. v. Old Orchard Creek Partners, LED therefore explained: "The inclusion of the word 'sub-subcontractor' in the waiver clause indicates that a considerable depth of the parties was contemplated and that the waiver was not meant to be limited only to those who contracted directly with the prime contractor."  848 S.W.2d at 730.

## ANALYSIS

The Court agrees with the parties that it can, as a matter of law, interpret the subrogation waiver in the Contract, and that a Mark V hearing is not necessary.  Of the three main arguments that Western States has proffered to argue that subrogation is foreclosed in this case – that the scheme of insurance precludes subrogation, that it is a co-insured under the policy such that subrogation is unavailable, and that the subrogation clause, by its text, applies to subcontractors – the Court finds the textual argument persuasive.  Accordingly, while the Court is not convinced that the scheme of insurance precludes subrogation or that Western States was a co-insured, the Court believes the clause is drafted to encompass subcontractors, and that Western States, as a third-party beneficiary, is entitled to invoke the subrogation waver.  The Court also finds unpersuasive Great American's argument that the allegedly negligent acts that Western States committed fell outside the scope of the Contract and would thus not be within the scope of the subrogation waiver.  Thus,

after reviewing the applicable contract terms, the Court concludes that Great American is precluded from pursuing a subrogation claim against Western States. The Court will therefore grant summary judgment in favor of Western States on the subrogation claim.

## I.     THE COURT CAN INTERPRET THE SUBROGATION WAIVER AS A MATTER OF LAW.

New Mexico follows the "contextual" approach to contract interpretation, which "allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity." Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235. Under New Mexico contract law, "[I]N the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists." Id., 845 P.2d at 1235 (citing Vickers v. North Am. Land Dev., Inc., 94 N.M. at 68, 607 P.2d at 606). The question whether an agreement is ambiguous is a matter of law. See Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235. If a court finds that the contract is "reasonably and fairly susceptible of different constructions, an ambiguity exists." Id., 845 P.2d at 1235. If, however, "the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law." Id., 845 P.2d at 1235.

In this case, all parties have agreed that there is no need for the Court to hold a hearing to take additional extrinsic evidence regarding the Contract's meaning. See Tr. at 23:24-24:13 (Phillips, Court, Pharris). Rather, both parties have urged the Court do interpret the Contract as a matter of law based on the materials before it. See id. at 9:18-21 (Pharris)("I think it's fair and reasonable to proceed to make a determination as a matter of law based upon what is set forth in the General Conditions as contained in the Project Manual and as cited in our briefs."); id. at 23:24-24:5 (Phillips, Court).

-13-

The Court agrees with the parties that it can interpret the provisions at issue. The parties have pointed to no factual disputes about the surrounding circumstances, nor has the Court discovered competing inferences, that would lead the Court to conclude that there is an ambiguity, the resolution of which turns on witness credibility. Rather, the parties have asked the Court to interpret the Contract as a matter of law. That the parties disagree about how the contract's language should be construed does not, on its own, create ambiguity. See Levinson v. Morley, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987)("The mere fact that the parties are in disagreement on construction to be given to the contract does not necessarily establish an ambiguity."). The Court will therefore proceed to interpret the contract.

## II.   THE SCHEME OF INSURANCE DOES NOT PRECLUDE A SUBROGATION CLAIM.

Western States urges the Court to disallow subrogation based on the existence of a scheme of insurance that would preclude subrogation. As authority for this proposition, Western States cites Temple EasTex, Inc., v. Old Orchard Greek Partners, Ltd. The Court believes Western States raises a valid point in the general sense, but that the argument does not work, given the facts of this case.

As the Texas Court of Appeals points out in Temple EasTex, Inc., v. Old Orchard Greek Partners, Ltd., the policy underlying subrogation waivers such as the one between UNM and Britton "is to avoid disruption and disputes among the parties to the project," and to "eliminate the need for lawsuits between the parties . . . because all contracting parties are protected from property loss under the owner's property insurance." 848 S.W.2d at 731. The Contract's provisions dealing with insurance and subrogation were standard clauses nearly identical to the ones with which the Texas Court of Appeals dealt in Temple EasTex, Inc., v. Old Orchard Greek Partners, Ltd. The Contract states:

-14-

11.4.1   The Owner will provide property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial contract sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles.   Such property insurance will be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Paragraph 11.4 to be covered, whichever is later.   This insurance will include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

11.4.2   The Builder's Risk coverage to be furnished by the Owner is provided under the State of New Mexico's Blanket Property Coverage Policy, a copy of which is available at UNM's Department of Facility Planning.

11.4.3   If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner will so inform the Contractor in writing prior to commencement of the Work.   The Contractor may then affect insurance, which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order, the cost thereof will be charged to the Owner.

Contract §§ 11.4.1 to 11.4.3, at 52.   Under these clauses, the Contract contemplates a scheme, under which there is one insurance policy that "will include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project." Id. § 11.4.1.   The Court therefore agrees with Western States' contention that these contract provisions set up a standard situation in large construction contracts, and that the purpose is to eliminate lawsuits.

The problem is that, in this case, while the Contract calls for an "all-risk" or equivalent policy to protect the interests of the owner, contractor, subcontractors, and sub-subcontractors, no such policy was obtained.   The Texas Court of Appeals in Temple EasTex, Inc., v. Old Orchard Greek Partners, Ltd., in discussing the policy implications of the contract terms it was analyzing – terms which were nearly identical to the one in this case – was dealing with a scenario in which the

requisite insurance policy was in place.  In other words, the scheme of insurance that would eliminate lawsuits was properly implemented pursuant to the contract's requirements.

The Contract between UNM and Britton appears to contemplate a similar scheme, but the scheme did not get implemented.  This failure to acquire the "all-risk" or equivalent policy to cover the interests of the owner, contractor, subcontractor, and sub-subcontractors might give rise to a breach-of-contract claim.  The Court cannot reasonably conclude, however, that the consequence of the failure or the existence of an overarching scheme of insurance, is that subrogation is disallowed against Western States.  The words of the Contract, rather than the existence of an insurance scheme, govern whether subrogation is allowed.

In sum, Western-States' scheme-of-insurance analysis does not answer the question whether subrogation is allowed.  Because the scheme of insurance was not put into place, as the Contract required, the Court will not rely on the scheme of insurance to preclude Great American's subrogation claim.  Instead, the Court must look to the Contract's terms to determine whether those terms compel a finding that Britton's – and thus its insurer's – subrogation rights against Western States were waived.

## III. <u>WESTERN STATES WAS NOT A CO-INSURED.</u>

Western States contends that it was a co-insured under the Policy and that Great American therefore cannot bring a subrogation claim against it.  Great American concedes that it could not bring a subrogation claim against Western States if Western States was a co-insured under the Policy.  <u>See</u> Tr. at 29:15-25 (Phillips).  Great American points to the Policy, however, to argue that Western States is not named as an insured.  Great American has the better argument.

In New Mexico, "an insurer may not be Subrogate against a contractor who is insured against damage to his own property under a builder's risk policy, even though the subcontractor's

-16-

negligence may have resulted in a loss to another co-insured." State ex rel. Regents of New Mexico State University v. Siplast, Inc., 117 N.M. 738, 742, 877 P.2d 38, 42 (1994). In holding that an insurer cannot subrogate against its own insured, the Supreme Court of New Mexico reasoned:

> To permit the insurer to sue its own insured for a liability covered by the insurance policy would violate these basic equity principles, as well as violate sound public policy. Such action, if permitted, would (1) allow the insurer to expend the premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.

Id. at 743, 877 P.2d at 43. Thus, Great American has correctly stated that, if Western States were an insured under the Policy, Great American would have no subrogation claim against Western States. In this case, however, Western States is not an insured.

To determine whether a party was a co-insured under a policy in State ex rel. Regents of New Mexico State University v. Siplast, Inc., the Supreme Court of New Mexico looked to the policy, which stated: "[The insurance provided by this form covers the following property and interests: . . . F. contractors', subcontractors' and sub-subcontractors' interests in property in the course of construction, alteration or repair and when completed, to the extent of Insured's liability therefor." State ex rel. Regents of New Mexico State University v. Siplast, Inc., 117 N.M. at 741, 877 P.2d at 41. Because the party asserting that it was co-insured was a subcontractor, the Supreme Court of New Mexico in State ex rel. Regents of New Mexico State University v. Siplast, Inc. found that the policy named it as a co-insured. See id., 877 P.2d at 41.

Unlike the policy at issue in State ex rel. Regents of New Mexico State University v. Siplast, Inc., Britton's Policy with Great American does not include the interests of subcontractors. Rather,

the only listed insured is "Britton Construction, Inc."  Policy at 1.  The policy contains no provision of coverage for subcontractors.  Given that there is no coverage in the policy for subcontractors, the Court is not willing to find that Western States is a co-insured under the policy.

In its motion, Western States makes two arguments to support the proposition that it was a co-insured.  First, Western States contends: "Where a party is a subcontractor, they are coinsured where the contractor's insurance policy so provides."  Motion at 14.  As a general matter, that is a correct statement of the law.  The Policy in this case, however, does not so provide.  Rather, the Policy names one insured – Britton – and is silent regarding the interests of subcontractors.  Second, Western States cites the main Contract between Britton and UNM, which required an insurance policy that would "include the interests of the Owner, the Contractor, Subcontractor and Sub-subcontractors."  Motion at 15 (citations and internal quotation marks omitted).

The Court acknowledges that, under the Contract, the owner, or alternatively, the general contractor, was to obtain a policy that would protect the interests of the owner, contractor, and subcontractors.  No such policy was obtained.  It would not be proper for the Court to, in essence, reform the insurance Policy that Britton obtained to make it cover the interests mentioned in the main Contract.  The Court would be creating a new policy that, although contemplated under the Contract, was never obtained.

Given the language contained in the Policy, the Court concludes that Britton is the insured.  There is no provision in the policy for subcontractors.  Thus, while a policy to protect subcontractor's interests arguably should have been obtained, no such policy was obtained in this case.  Western States is thus not a co-insured under Britton's Policy.

## IV.    THE WAIVER OF THE RIGHT TO SUBROGATION PRECLUDES GREAT AMERICAN'S SUBROGATION CLAIM.

While Western States was not a co-insured under the Policy, and while the scheme of insurance does not preclude subrogation in this case, the Court believes a careful reading of the subrogation waiver in the Contract demonstrates that Western States is a third-party beneficiary to the Contract and that the subrogation waiver therefore applies.  At the hearing, the Court asked the parties whether it was necessary to analyze whether Western States was a third-party beneficiary to the Contract.  Western States represented that there was no need to determine whether it was a third-party beneficiary.  See Tr. at 27:15-21 (Court, Phillips).  The Court disagrees, and believes that, because the scheme-of-insurance argument failed, and because Western States was not a co-insured, it is necessary to determine whether it was a third party beneficiary if the Court is to find that the subrogation waiver applies.  Ultimately, the Court believes that Western States was a third-party beneficiary and that the subrogation waiver in the Contract precludes a subrogation claim such as the one Great American is pursuing.

### A.    WESTERN STATES IS A THIRD-PARTY BENEFICIARY OF THE SUBROGATION WAIVER IN THE CONTRACT.

Although both parties have argued that third-party beneficiary analysis is unnecessary in this case, neither party elaborated why this doctrine is inapplicable.  The general rule is that "one who is not a party to a contract cannot maintain suit upon it."  Fleet Mortgage Corp. v. Schuster, 112 N.M. 48, 49, 811 P.2d 81, 82 (1991).  Despite this general rule, "[a] third-party may have an enforceable right against an actual party to a contract if the third-party is a beneficiary of the contract."  Callahan v. New Mexico Federation of Teachers-TVI, 139 N.M. at 208, 131 P.3d at 58. Because Western States is trying to enforce a right from a contract to which Britton and UNM, but not Western States, are parties, the Court must evaluate whether Western States falls under the

-19-

exception to the general rule that one who is not a party to a contract may not maintain suit upon the contract.  In other words, the Court must decide whether Western States is a third-party beneficiary to the Contract between Britton and UNM.  The Court determines that Western States was an intended third-party beneficiary.

The key inquiry in determining third-party-beneficiary status is whether the parties to a contract intended the contract to benefit the third party.  The Supreme Court of New Mexico has explained: "The intent to benefit the third-party must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." Callahan v. New Mexico Federation of Teachers-TVI, 139 N.M. at 208, 131 P.3d at 58 (citations and internal quotation marks omitted).

The contractual language at issue here states:

**Waivers of Subrogation:** The Owner and Contractor waive all rights <u>against (1) each other and any of their Subcontractors</u>, Sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their Subcontractors, Sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner.  The Owner or Contractor, as appropriate, will require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the Subcontractors, Sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein.  The policies will provide such waivers of subrogation by endorsements or otherwise.  A waiver of subrogation will be effective as to any person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

Contract § 11.4.8, at 54 (emphasis added)(bold typeface in original).

The Court need look no further than this language from the Contract to determine that the

subrogation waiver was intended to benefit parties other than those who signed the Contract.  In

agreeing to § 11.4.8, UNM and Britton waived subrogation rights against each other "and any of

their Subcontractors, Sub-subcontractors, agents and employees, each of the other. . . ."  Contract

§ 11.4.8, at 54.  Thus, besides the parties to the Contract, § 11.4.8 brings under the waiver

subcontractors and sub-subcontractors, among others.

    The Texas Court of Appeals in Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.

applied a similar approach, noting:

> The inclusion of the word "sub-subcontractor" in the waiver clause indicates that a
> considerable depth of parties was contemplated and that the waiver was not meant
> to be limited only to those who contracted directly with the prime contractor.
> Crow-Williams, I v. Federal Pac. Elec. Co., 683 S.W.2d 523, 524 (Tex. App. -Dallas
> 1984, no writ). The language, "The Owner and Contractor waive all rights against
> each other and the Sub-contractors, Sub-subcontractors, agents and employees each
> of the other . . .," in section 11.3.6 of the contract reveals Old Orchard's and Greener
> & Sumner's intent that the waiver provision extend to subcontractors. Therefore, Red
> Dillard, as a subcontractor, is entitled to benefit from the waiver provision. Because
> Red Dillard is benefitted by the waiver provision, Red Dillard is a third-party
> beneficiary of the construction contract. As a third-party beneficiary, Red Dillard is
> entitled to rely upon and to enforce all of the contract's provisions.

Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd., 848 S.W.2d at 730 (alterations in Temple

EasTex, Inc. v. Old Orchard Creek Partners, Ltd.).  The Court believes that this analysis is sound

and that it is applicable to this case.  As the Texas Court of Appeals noted in Temple EasTex, Inc.

v. Old Orchard Creek Partners, Ltd., the subrogation waiver it was considering was standard

language from a form contract that the American Institute of Architects ("AIA") provided.  See 848

S.W.2d at 729.  The relevant contract provisions at issue in this case are nearly identical and are

similarly drawn from AIA forms.

    That subcontractors are named in the Contract as persons against whom subrogation is

waived convinces the Court that subcontractors are intended to be third-party beneficiaries of the

subrogation waiver.  Western States, as a subcontractor, is therefore entitled, at least in some circumstances, to invoke this subrogation waiver.

### B.    THE SUBROGATION WAIVER APPLIES BETWEEN GREAT AMERICAN, AS BRITTON'S INSURED, AND WESTERN STATES, AS BRITTON'S SUBCONTRACTOR.

Although the Court finds that, by naming subcontractors, the subrogation waiver in the Contract makes Western States a third-party beneficiary, the Court must still determine whether the subrogation waiver applies in this instance.  After carefully reviewing the subrogation waiver's language, the Court concludes that Great American cannot bring a subrogation claim against Western States.

It is undisputed that Great American has no greater rights than its insured, Britton.  See Response at 5.  In other words, if Britton waived subrogation rights against its subcontractor, then Britton's insurer, Great American, will have no rights of subrogation against Britton's subcontractor. The Court must therefore determine the scope of the subrogation waiver in the Contract.

The subrogation waiver provides: "The Owner and Contractor waive all rights against (1) each other and any of their Subcontractors, Sub-subcontractors, agents and employees, each of the other . . . ."  Contract § 11.4.8, at 52.  The plain language of this clause refutes the horizontal-vertical distinction upon which Great American has sought to rely.  Britton, as contractor, waived all subrogation rights, not only against UNM, but also against "their subcontractors . . . ."  Id.  The clause is drafted broadly to make the subrogation waiver inclusive.  Thus, according to the language, neither Britton nor UNM may bring subrogation claims against each other or against their subcontractors.

The broadly crafted language in the subrogation waiver makes sense, given that the subrogation waiver is drawn from a standard AIA contract form which is used in construction

projects to eliminate lawsuits and cover loss with one all-risk or equivalent insurance policy.  A

treatise on construction law has explained that the AIA provision from which the subrogation waiver

in this case is drawn "applies expressly to subcontractors.  Therefore, subcontractors are protected

from subrogation actions by virtue of this clause."  P. Brunei & P. O'Connor, Jr., Brunei and

O'Connor on Construction Law § 5:231, Standard Construction Contract Forms: Analysis of the

AIA General Conditions (2009).

 While the Court found that the scheme of insurance that would normally be present in a

transaction such as this one was not put into place, this standard clause's intended operation is clear:

The owner and the general contractor are to waive subrogation rights against each other and against

their subcontractors and other named entities in the waiver.  At the same time, either the owner or

the contractor is required to obtain a policy that will protect the interests of those parties.

 Although the parties did not follow through and obtain the insurance, such a failure does not

alter the consequences of the subrogation waiver.  Fulfilled or not, the requirement to obtain the

insurance Policy set forth in § 11.4.1 of the Contract demonstrates that the subrogation waiver was

supposed to eliminate subrogation rights vertically as well as horizontally.  To hold otherwise would

require the Court to cross out language in the Contract even though there is no evidence that the

parties negotiated such an alteration to the Contract's terms.

 Great American concedes that there is a subrogation waiver, but argues that the subrogation

waiver applies only against the owner – UNM.  Great American supports this contention by arguing

that the Subcontract states only that "Subcontractor waives all rights of subrogation they may have

had under said policies with respect to the Owner."  Subcontract ¶ 16, at 3.  According to Great

American, the Subcontract's subrogation waiver, which applies only against the UNM, demonstrates

that the subrogation waiver in the main Contract also applies only against UNM.  The Court,

however, does not believe the admittedly more restrictive subrogation waiver in the Subcontract serves to eliminate the waiver expressed in the broad language of the main Contract.

The Court might give more weight to Great American's argument regarding the Subcontract if the Subcontract's subrogation waiver had been drafted so that Britton could preserve subrogation rights against its own subcontractors. Such a situation might be evidence that Britton understood the subrogation waiver in its Contract with UNM to encompass only subrogation against UNM. In this case, however, the subrogation waiver in the Subcontract is somewhat different, but ultimately compatible with the subrogation waiver in the Contract. Pursuant to the Subcontract, Western States waived rights to subrogation against UNM. In other words, the Subcontract requires a bottom-up waiver of subrogation, whereby Western States waives the right to subrogate against the owner. The Subcontract does not say, however, that Britton reserved subrogation rights against Western States that would otherwise have been waived under the main Contract. Given such differences, the subrogation waiver is not helpful to determining whether Britton reserved or waived subrogation rights against subcontractors. Furthermore, the Court does not see the Subcontract's subrogation waiver as evidence that would indicate that Britton and UNM understood the subrogation waiver in their clause to prevent only UNM from Subrogation against Britton's subcontractors.

The Subcontract incorporates the Contract between Britton and UNM. See Subcontract at 1. The subrogation waiver from Britton's and UNM's Contract is therefore incorporated into the Subcontract. Great American's argument that, if Britton had wanted to waive subrogation against Western, it would have put such a waiver in the subcontract, therefore misses the mark. The Contract already included a waiver of subrogation by the contractor against subcontractors. There was no need to reiterate the waiver in the Subcontract.

Britton could have drafted a clause in the Subcontract that preserved its right to seek

subrogation against its subcontractor.  Because of the existence of the waiver of such subrogation rights in the main Contract, such a clause would have created an inconsistency, given that the main Contract is incorporated in the Subcontract.  Under such circumstances, the Court would be dealing with a separate set of questions, but such a clause might at least be evidence that the parties contemplated something different than what the plain language of the clause states.  This case, however, does not present such facts.

The Court agrees with Western States' argument that the policy behind this standard subrogation waiver is to avoid disruptions among the parties to the construction contract.  To accomplish that end, the subrogation waiver, when combined with an insurance coverage requirement such as the one in sections 11.4.1 to 11.4.3 of the Contract, "eliminates the need for lawsuits, and yet protects the contracting parties from loss by bringing all property damage under the all risks builder's property insurance."  Tokio Marine and Fire Ins. Co., Ltd. v. Employers Ins. of Wausau, 786 F.2d 101, 104 (1986).  Like lawsuits between owner and contractor, or owner and contractor's subcontractors, lawsuits between contractors and their subcontractors have a similar potential to harmfully disrupt a construction project.

The Court has carefully read the Contract.  In so doing, the Court concludes that the restrictive readings Great American wishes to apply to the subrogation waiver, including that there is no vertical waiver, or alternatively, that any such vertical waiver only applies to bar UNM from seeking subrogation against Britton's subcontractors, are counter to the plain language and to the subrogation waiver's purpose in the Contract.  Reading the Clause for what it is, the Court finds that Britton and UNM waived subrogation rights against "their Subcontractors . . . ."  Contract § 11.4.8, at 52.  Great American, having no greater rights than Britton, its insured, therefore cannot pursue a subrogation claim against Western States.

-25-

**V.      THE INSTALLATION OF THE FLANGE WAS NOT OUTSIDE THE SCOPE OF WESTERN STATE'S CONTRACT.**

The Court must address one other argument that Great American has raised to avoid application of the subrogation waiver.  Great American contends that, because the allegedly negligent acts in this case were committed outside the scope of the Contract, Western States should not be able to rely on the Contract for defenses or for summary judgment.  To support its argument, Great American cites the deposition testimony of Western States' corporate representative, Raymond Clayton:

> Q.      All right.  You guys installed the uni-flange?
>
> A.      That's the portion, yes.  Yes.
>
> * * * *
>
> Q.      Where in your contract did it call for you to install the uni-flange?
>
> A.      It did not.
>
> Q.      So your work in installing that uni-flange wasn't covered in any contract that you had with Britton.
>
> A.      Well, it didn't say we wouldn't, either.

Exhibit D to Response, Deposition of Raymond Clayton at 50:22-23, 158:3-9 (taken January28, 2009)(Doc. 24-4)("Clayton Demo.").  Great American also stipulates that the Court can, as a matter of law, determine whether the flange installation was done within or outside the scope of the Subcontract, and urges the Court to make this determination on this motion.  See Tr. at 41:23-42:1 (Court and Phillips).

The Court finds the contention that the flange was installed outside the scope of the contract unconvincing.  The Subcontract required Western States "to furnish all labor, material and equipment to complete all of the work described in paragraph 'The Work' hereof for the

construction of and/or work done on: Project: Zimmerman Library Basement Floor Fire Damage Rebuild (UNM #206J005)."  Subcontract at 1.  The Subcontract in turn describes the "Work" in broad terms, stating: "The SUBCONTRACTOR shall without limitation furnish and pay for all labor, supervision, scaffolding, equipment, tools, appliances, transportation, storage, permits and everything necessary to fully complete THE WORK in accordance with project plans and specifications described below."  Subcontract at 1.  The Subcontract further describes the "Work" as: "Furbishing] all plant, labor, equipment, and material required to complete Automatic Fire Sprinkler System at the Zimmerman Library Basement Fire Damage Rebuild . . . ."  Id.

The Subcontract therefore required Western States' presence, and, ultimately, Western States was there to install a fire sprinkler system.  While the plan design may have called for a different contractor to install the specific section of pipe, Western States' agreement to go ahead and install that section of pipe as part of its work does not mean it was operating outside the Contract and Subcontract such that Western States' contractual rights disappeared.  By installing the piece of pipe, Western States furthered its own contracted task of completing the water system.  That Western States could have allowed the other contractor to install the section of pipe and still completed its contract does not mean its agreement to do the installation was not part of its larger job of completing the sprinkler system.

The Court might be more willing to find that the work was done outside the scope of the Contract or the Subcontract if Western States or one if its employees decided, for whatever reason, to tinker with other aspects of the project unrelated to the task of completing the sprinkler system. For example, it might have been beyond the scope of the Contract for Western States to take it upon itself to do the concrete work for the project, or to conduct or to alter the framing or foundation of the building.  In this case, however, Western States did a task which, while expressly part of another

contractor's agreement, was closely related to, and likely necessary to the ultimate completion of the sprinkler-system installation.  Ultimately, Western States was not relieved of any contractual obligation by installing the section of pipe, and should not be deemed to have waived contractual rights by performing an additional, but closely related task to the one it was contracted to completed.

In the end, after careful consideration of the various contractual provisions at issue, the Court determines that Great American may not pursue a subrogation claim against Western States.  It is true that the scheme of insurance, which the Contract arguably required, was not put into place. Furthermore, Western States was not a co-insured under the Policy that Britton acquired.  Those failings notwithstanding, Britton and UNM contracted to waive subrogation rights horizontally and vertically.  Nothing in the Subcontract or elsewhere overrode the plain language of the subrogation waiver in the main Contract, to which Britton and UNM agreed.  The consequence of the waiver is that Britton does not have a right to seek subrogation from Western States.  Because Britton has no right to subrogation from Western States, neither does Britton's insurer, Great American.  As a result, Great American has no subrogation claim against Western States.  For those reasons, the Court will grant the motion for summary judgment in Western States' favor.

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment is granted.

_____
UNITED STATES DISTRICT JUDGE

-28-

*Counsel*:

Ada B. Priest
Madison Harbor & Moz. PA
Albuquerque, New Mexico

-- and --

Stephen B. Fisher
Kevin M. Phillips
Fisher Canaries, PC
Chicago, Illinois

     *Attorneys for the Plaintiff*

Charles A. Pharris
Cassandra Malone
Kelleher & Macleod
Albuquerque, New Mexico

     *Attorneys for the Defendant*